We approach those. We have two motions that my colleagues wish to make, and we'll start with Judge Klavenger. May it please the Court, I move the admission of Sarah Klavenger, who is a member of the Bar in good standing of the highest courts of Georgia, Virginia, and the District of Columbia. I have knowledge of her credentials, and I'm satisfied that she possesses the necessary qualifications. I should add that I could make the last statement because Ms. Klavenger has been my law clerk for the last 12 months, and has served my chambers in the court with great honor and dignity and with great skill. And we will miss her when she leaves, but she's leaving not to go into the patent bar, but to go back to Georgia and to go into public service as a public defender lawyer, and I'm proud of her decision. Thank you. Shall we grant the motion? Absolutely. Judge Klavenger, your motion is granted. We welcome Ms. Klavenger to the Bar of the Court and thank her for her service as a law clerk during the last year. And if you would just sit down for one moment, we'll do joint oath-taking after we have the other motion. May it please the Court, I move the admission of my clerk, Robert Arcimona, who is a member of the Bar in good standing of the highest court of New York. I've said for a very long time that a lawyer has to work hard, by deed and thought, jealously, guard his or her reputation, and keep his eye on the puck. I have knowledge of Rob's credentials, and I'm satisfied that he possesses the necessary qualifications. Judge Wallach, your motion is granted, and we also welcome you to the Bar of the Court and thank you for your service as a law clerk during the last year. So, I think now the two of you can take the oath. Mr. Klavenger, I swear and affirm that you report yourself as an attorney and counsel to this court. I'll rightly be adhering to the law and to the support of the Constitution of the United States of America. Congratulations, and welcome to the Bar of the Court of Appeal. Thank you both. Okay, we'll now hear argument in our friend 7184, Walker v. Shinseki, Mr. Foreman. May it please the Court. Principles relating to service connection are set out in 38 CFR section 3.303, but section 3.303 is not a one-size-fits-all regulation. It specifies different elements for evaluating different kinds of service connection based on the type of disability, when the disability was first diagnosed, and so on. Mr. Walker claims service connection for his hearing loss. I must say, and I'll ask the government about this also, that I find the regulation confusing and I find our cases not all that helpful in interpreting the regulation. Is it your understanding under the regulation that if during service a particular condition manifests itself, let's say a rare form of cancer or something like that, that the mere fact that it was manifested during service and there was a presumption of sound condition because there was nothing noted on entry into service, that that alone is sufficient to establish a rebuttable presumption that the condition or disease was service-connected? I don't think so. As I said, there are different types of disabilities that have different analyses. In that case, I think if it's diagnosed in service, or let's say something happens in service, if it's diagnosed in service, and then later it reappears, then it's a medical nexus that would have to be established. Let's put to one side for a moment the question of later continuity or whatever. There's someone that serves in Vietnam for a couple of years, and there's a cancer that's manifested during service. Does that cancer have to be medical evidence connecting that cancer to some event or occurrence during service, or is the mere fact that it was manifested during service sufficient to create a presumption of service connection? If I can depart just a little bit and not go to cancer, but I point out that Section 3.303B is specifically directed to chronic diseases. So these are diseases that once you have them, they can't be cured, and it has different rules depending on whether it's diagnosed as a chronic disease. Well, but just stick with my hypothetical for a moment. There's a cancer that's manifested, but it's not connected to any chemical exposure or event in service. Is the fact that this first manifested itself during service sufficient? The regulation on its face seems to say that that is sufficient to establish service connection. That's my understanding, actually. And many of the cases seem to make decisions of that sort. For instance, psychoses that manifest themselves for the first time during service. So even if there was no connection to cause. Say, for example, a veteran had hearing loss that was noted during service, say, by a spouse or a child's son or someone like that. But it turns out that that hearing loss that was noted was due to wax in the ears or was due to, say, having attended a rock concert while on leave, totally separated from service, had the eardrums blown out at a rock concert. That person, the fact that it was noted in service would still be sufficient? Under Section 3.303B, in the specific type of situation you described, it's... I wouldn't say it's... My understanding, which may be wrong, is that that could be service-connected, provided there was no hearing loss before... hearing was normal before service and that it was incurred during service. So something was noted and you have a hearing problem and you had a headache or something that temporarily affected your hearing that one person noted that wife said, gee, I can't hear you. You claim you can't be heard. That's specifically a situation covered in Section 3.303B, which is hearing loss is certainly potentially a chronic condition, but then if it's challenged, if there's a question as to whether that's really a chronic condition that was first noted... Now, wouldn't it be so for... we're assuming that hearing loss is a chronic problem? Nobody has addressed that in any of the briefs. And that's... it's unfortunate that's an important factual question. I mean, no one has touched on that at all anywhere in this case yet. And as I... I've not been able to find it in any other cases. There are some conditions that are now... in fact, there are many, some of them in the regulations that are recognized as being chronic diseases. So does 3.303B apply at all if we're not dealing with a chronic condition? 3.303B does apply where it's alleged or it's believed that it's a chronic condition. It certainly could be a chronic condition. If it's challenged, then... So 3.303B, as you say, removes the need to show that the person actually contracted the compensable problem in service. But no, it has to... It's my hypothetical, it takes it out of service. If you're a member of the service and you're on leave, you're totally disconnected from your service. Say, for example, maybe you're in the reserves and you're not on duty at all, but you manage to... you self-inflict a hearing loss. The hearing loss was noted in my hypothetical, right? Yes, there is actually a provision in the statute, I don't remember the number, that takes out self-inflicted injuries for injuries due to misuse of drugs. Well, but there's also something in the regulation, isn't there, in subsection B that talks about unless clearly attributable to intercurrent causes. So in Judge Clevenger's hypothetical, the government could come in and say, well, this was not the result of service, it was the result of something that happened after service. In this case... Well, that's for the continuity. The continuity is broken if after service you have a period when something didn't happen and it was as a result of an intervening cause. That's my understanding, is the intercurrent cause relates to something that happens after service. Why isn't any of this brief? I mean, you come in with your argument, you made a 303A and B argument, your initial brief was confusing to me because you were arguing that there's no need to show causation under A. This argument that you're making, that there is no need for the veteran to show that they contracted the compensable disease in service, so long as someone noted that the condition existed, there's no causal relationship, you're not arguing that applies beyond chronicity, are you? Correct, yes. So basically, in a chronic condition, the causation proof requirements are reduced over what they would ordinarily be. No, I believe they're not, but rather, I hope I'm not confusing this, but my understanding... No, but if you had a broken arm, for example. Yes. If your arm got broken while you were in service, right? Yes. It's not a chronic problem, okay? And your arm was broken not as a result of anything you were doing while you were in service, lifting and whatnot, but you broke it, you fell down the stairs at home. My understanding is that if it occurs in service and it's not self-inflicted or these other exceptions, then that is sufficient to be a chronic disease. A chronic disease? Yes. But what about non-chronic? I believe they would also be sufficient. I mean, the regulations are full of things... 303B refers to chronic diseases. It says, you know, it says chronicity and continuity, right? Yes. There's no requirement to show continuity, is there, with regard to, say, an arm injury? No, not necessarily. The purpose of the continuity requirement is that there are certain types of things, certain types of chronic diseases, where you get them right away, and you're going to presume, even if the veteran, if he's diagnosed with a particular type of chronic disease in service, and then he gets out and nothing happens, and then ten years later his MS manifests itself, then the continuity of symptomatology is presumed with certain diseases, correct? With certain diseases... And when it's not presumed to exist, either because it isn't a qualified disease or there's been an intermittent thing that broke it up, then continuity has to be shown. That's what it says. When the fact of chronicity in service is not adequately supported, then a showing is required. Yes, exactly. I think you've stated the law correctly there. Yes, sir. Go ahead. Mr. Foreman, is there anything in the record about the physiological problems that were very common among four-engine bomber crews during the Second World War? Well, what is in the record is that the VA conceded that he suffered acoustic trauma, and it's certainly not contested that those planes are very loud. And, on the other hand, there's especially no physiological record at that time because... Sure, it says, poor Benjamin Harrison burned down. Because of that fire, yes. Let me bring you back for a moment to the causation question. Yes. Suppose there's a broken arm during service, and you would say that the fact that it happened during service makes it service-connected, absent willful misconduct or whatever. And then arthritis is manifested later on in that joint. You do agree that under those circumstances, there would have to be a showing that the arthritis was the result of the broken arm during service, right? Exactly, and that's under 3.303D in particular, yes. Yes, but just to step back, there are many diseases that occur in service that are chronic, and in many cases granting service connection even though there's no evidence that the service caused or that service activity, such as... Can I try to figure out where your theory of 3.303D fits into this case? Yes. Because in this case, as I understand it, the BVA said, we're not going to give any weight to the lay testimony. It's incompetent. To diagnose. It was competent to recognize. Yeah, well, no. It was record-competent, but it was incompetent to be able to say caused, that the hearing was caused by the airplane, right? Now, that's wrong under our case law, clearly. Correctly? Buchanan, lay testimony is competent for all purposes. It may be discounted, but it's competent. So that's a fundamental error that the BVA made. The reason that it's... Let me get to it, folks. That was the evidence as to the fact that the airplane motors caused veteran Walker's hearing loss, right? Yes. And they discounted that. Your theory of the case is that that's unnecessary. Yes. Totally unnecessary. We don't really care about proof of causation. Yeah, under the... But, I mean, I'm trying to narrow down what your case... Yes. Because you certainly did not tell me in your brief. Oh, I'm sorry. The case law, such as Savage-Gober and Barfi-Nicholson, sets out that this is an alternative method that doesn't require the same kinds of proof. It requires that the condition was noted... For a chronic disease. What? For a chronic disease. And there's been no showing yet that this hearing loss is chronic. And the record of the case. Oh, no, you would say that there's evidence that was chronic because it recurred throughout his life after... Throughout his life, indeed, it was... Right, but I'm just saying the case hasn't been presented... The way in which you're presenting the case to us today is being presented for the first time to an adjudicated body in that fashion. Yes. No one argued at the BVA you don't really care what caused the hearing loss. Because it was noted in service in 3.305B counts, right? And no one said that at the CABC. Right, that it was noted in service, that there was continuity of symptomatology, and that there is a relation between those symptoms and the medical diagnosis, which is the... And you cite Robinson in your briefs, right, but you don't cite Clegg? Robinson is a non-presidential opinion on which you rely. Why don't you cite Clegg? Because it comes out the other way. I'm sorry, I wasn't aware of that. Unless there are other... No, I... We'll give you four minutes for your rebuttal. Great, thank you. Good morning, and may it please the court. The government makes a waiver argument. I'm not going to address that unless the court wants to go there today. I'd like to dive right into the questions about the meaning of 3.303B and the competency of lay evidence. Is there a causation requirement when condition or disease appears for the first time during service? Does that make it service-connected? Absent some showing by the government that it's not service-connected. Under 3.303B, if there is a diagnosis of a chronic condition in service, and there is a present disability, and that is the same... That's not the questioning that the presiding judge is asking. If there's a diagnosis of a chronic disease in service, then we're on a different turf. There was no diagnosis here. The hearing loss was noted, as the CAVC case law says. Noted means somebody took attention to it. So the veteran Walker's hearing loss was noted in service by both his wife and his son. Now, the question is, is anything more needed? That was the question from the presiding judge, I believe. Is anything more needed by way of causation? Ordinarily, you have to prove, unless you're exposed to a particular chemical, for example, we thought, if you have a cancer, you're supposed to show that something in the service was the cause of your cancer, unless you have Agent Orange or something like that. So what we're asking is, in chronic diseases, does 3.305B eliminate the need to show causation? That's right. It does. It does? 3.303B is meant to ‑‑ I'm sorry, service connection is typically a three-element test. And what 3.303B was supposed to do is, for certain chronic diseases, basically eliminate the nexus requirement. So if you could show that you were diagnosed in service, and I can get to that in a minute, but if you can show you were diagnosed in service with a chronic disease. But what does that mean in this context? Diagnosed means hearing loss? Or does it mean diagnosed with hearing loss resulting from noise exposure to bomber engines? Well, in the Court's question, I think it would be just hearing loss. It's just a condition. And that's consistent with Klieg. I think Klieg is ‑‑ the Court mentioned that the law is a little bit confusing here, and I would point the Court to Klieg. I think Klieg says you need to have a diagnosis in service. And Klieg expressly said that because Ms. Klieg, Mr. Klieg, did not have that diagnosis, there was no further application of 3.303B. But I want to get back to the purpose of 3.303B. If there's no diagnosis in service, then continuity of symptomatology works? Under the Veterans Court interpretation ‑‑ I'm reading from Klieg. Klieg says the regulation does not negate the requirement that a veteran show that he or she contracted a compensable disease in service or injury. That's right. We don't disagree with that. I think that's right, and I think that's consistent with our position. Again, 3.303B became untethered. Can we back up and just take this case and put in a snapshot of where we're now talking? What does veteran Walker have to do to prevail? We know veteran Walker was exposed to loud noise during service. The trauma has been conceded by the government, correct? That's right. Acoustic trauma was conceded. We know he worked in and around airplanes without ear protection. We know that. We also know that both his wife and his son noted during service that his hearing was impaired. We don't know how much impaired, but they noted hearing impaired, correct? There is a lay testimony to that effect. And that lay testimony is competent, right? You can perhaps overcome it by saying, well, the wife was hard of hearing, so she couldn't hear what he was saying, or the son wasn't, but it's competent evidence, right? Well, I can't agree with that straightforwardly. I need to explain a little bit. Under the court's precedence in Davidson and Jandreau, what the court said is the board cannot categorically exclude lay testimony, and that's what happened in those cases. There was a categorical exclusion. The board said we're not going to even consider the lay testimony, but if the court looks at footnote 4 in Jandreau and sort of the actual holding of the case at the end of Jandreau, the court nonetheless says it's going to be a case-by-case adjudication as to when lay testimony will be appropriate for purposes of diagnosis, and the court in footnote 4 gives the example. It says for something like a broken leg, that is very likely going to be a subject to lay testimony. For me, it's helpful to sort of try to take this case and run it through what you're agreeing with. So we have the trauma that the government accepts. We have the noting of the hearing loss in service, right? Now, we don't, do you believe, was chronicity in service adequately supported? Well, no. We need to look at the board's findings. So continuity of symptomatology is required. Well, I need to explain the broader scheme because I think that's the only way to understand this case, and I'll get to the court's question directly. I think it will make sense in that way. 3.303B was only supposed to apply to chronic conditions. Those chronic conditions are set out in 3.309. There is a list of chronic conditions. Bilateral hearing loss is not one of those conditions. So if we're going to first principles, if we're looking just at the regulation, it doesn't help Mr. Walker. The condition is simply not... Let me just back up a moment. Sure. Suppose there was no evidence of acoustic trauma here, and there was hearing loss. All there was was it was established that there was hearing loss during service. Do you agree that that establishes service connection for the hearing loss? Under the way that the veterans court has interpreted 3.303B... We're not bound by the veterans court. I absolutely recognize that. Well, the way you're talking is the government says that you believe that's correct. We're trying to get honest truth here, see what I mean? Yeah, and that's exactly right, and that's what I'm trying to help the court understand 3.303B and what it should have done and what the veterans court has done with it. Hearing loss established during service. It manifested itself for the first time during service as a presumption of soundness. There's no evidence of the willful misconduct or anything like that. Does that establish service connection of the hearing loss? We would say no for a couple of reasons. First, because we don't think 3.303B applies to non-crime... You don't have to look at B. A seems to say explicitly that if condition, disease, or injury was incurred coincident with the service that that establishes service connection. No? No, that's not right, and here's why. Because if we're talking about A, 3.303A, and Mr. Walker totally disclaims an argument based on 3.303A, so we don't think that would be appropriate for the court to look at, but if it does, then what we have are findings by the board that there was no causal link here. There was no nexus requirement. Where in regulation does there have to be a causal link? If a hearing loss is manifested in service, why does there have to be a causal link to some event in the service? The regulation on its face seems to say if it was incurred chronologically during service, it manifested itself during service, that's sufficient to establish service connection. Two points. One, I would direct the court to cases like Holton, which go through the elements of 3.303A service connection, and nexus is equated with causation. So there's no causation here. Moreover, we have board findings. Holden is a decision by us? Holton, H-O-L-T-O-N, I believe, is a decision of this court that walks through the service connection inquiry for purposes of 3.303A. So I think that would get to the court as a place where it can see how nexus works for purposes of A. But here you have findings. But you're positing that a causation requirement is embedded in A but not in B, correct? That is right. That is exactly right. That's what 3.303B was supposed to do. It was supposed to, for a list of chronic diseases that are enumerated in 3.309, it was supposed to make it easier for the veteran to get over that causal link, the nexus requirement. And so in effect, we have the first two elements of service connection, the standard elements as indicated in Holton. But that was the purpose of 3.303B. The government took a different position below. They were in accord with Mr. Walker. Does it make any difference that the claim is incurred, that the injury is incurred during wartime? I don't think it makes any difference for the purposes of this case. I don't think there's anything that the fact that it was in wartime as opposed to peacetime that would give Mr. Walker anything. And as to the, I would like to address the government's... Well, I want to ask you some questions actually. Absolutely. Does it make any difference to the government that reality, there is a reality that during the Second World War, it was very common that bomber crews suffered from combat stress and it was recognized that part of that was just the loud noise of having four big radio engines sitting outside the plane for hours at a time? It absolutely matters to the government. And as a general principle, the court is absolutely correct. But we have an adjudication here. The board took that into account and made findings of fact, relying on an audiologist's examination who said that the hearing loss was more likely caused by age-related presbycosis and recreational firearm use. And he hunted maybe seven times a year. Seven to eight times a year. We have a standard of review on facts, that's correct. But Holmes said that great caution should be used not to let fiction deny the fair play that can only be secured by a pretty close adhesion to fact. What about reality? All I would say is that we appreciate the court's concern, but the board took this into account. The secretary took this into account and made the findings of fact. Mr. Walker doesn't challenge the court findings of fact on appeal, and they are what they are. These are absolutely tough cases, and I fully concede that. These are difficult cases, and they're difficult for the secretary to adjudicate, but the secretary has to make the hard call. They should be difficult for the secretary. In this particular case, this determination flies in the face of reality. I realize what our standard of review is. We appreciate that, and we recognize that. Could I ask a question about 3.303B? It crept into the Code of Federal Regulations, I believe, in 1961. At least that's where I traced it back. I couldn't get any further back behind that. I couldn't find anything in the Federal Register that gave me explanation or any reasoning for what it was all about. And you've told us, you've helped us today by telling us that this was limited to chronicity. In your judgment, it was intended to relax the nexus cause requirement in A for chronic type of situations. And then you tell us that the agency has, by rulemaking, got a list of diseases that will fit 3.303B. Have you traced it back? Does the department have any basis for understanding why this regulation was originally promulgated? Where's your take on this come from? Yeah, we went back to 1961, and I think that we don't have much more than what's available on Westlaw, sort of searching back through the legislative history. We'd be happy to take another look and see if we can come up with something better. What we have is simply the text of the regulation. We don't have a notice of proposed rulemaking and comments and all the stuff that we get after 1978 or 79. That's right. It was in the earlier regime, so things have changed a little bit. And I don't have a definitive answer for the court. Let me come back to my question about what we do with this case. I mean, what you're telling me today is that your adversary's 3.30B argument is off the playing table because bilateral hearing loss doesn't qualify as a chronic disease. That's what you're telling me today. Nobody told me that in the brief. Yeah, and here's why. I'm trying to help the court understand 3.303B and what it was supposed to do, and that was relating to chronic conditions. What we did in the brief was address the arguments that Mr. Walker makes, and those arguments are that the board failed to consider this provision altogether. And we say no, and we cite the places where the board actually cited those provisions. So I think we focused on the arguments that Mr. Walker made to the court, and to the extent I can be helpful and try to... Now, why did continuity of symptomatology show up in the briefing to the CAVC? Your adversary said, we'd like to have a remand. Now, we know that the audiologist did not have the complete record in front of him. He didn't have the statements of the father and the wife, right? That's right. So the audiologist had, like, an incomplete record. Then we know that it went up to the BVA, and the BVA discounted the lay testimony as being incompetent, which under our case law is not right. Now, both the government and the veteran asked for a remand, right? What did you want the remand for? What was the purpose of the remand request from the government's point of view? The articulation from the government was based on the view that there was a categorical exclusion of lay evidence, and that was improper under the court's precedent. I see my time has expired. No, don't worry about the time. Okay. Thank you. We took another look at that, and we think we were wrong. And it gives me no pleasure to say that, but the Veterans Court sort of set us straight. And I want to address this notion that there was some error in the board's decision related to lay evidence. There's absolutely no error. And I would direct the court back to Jandrow. Look at the rule in Jandrow. Jandrow says that diagnosis and the competency of lay evidence is based on a case-by-case adjudication. Well, surely the wife and son were competent to say they had hearing loss. That's right, and that's exactly what the board said. That's exactly what the board acknowledged. And I want to direct the court to appendix page 20. The board observes that the veteran's son and wife are competent to testify about their observations concerning the veteran's hearing loss, but are not competent to diagnose the cause of the veteran's hearing loss disability. That's inconsistent with our case law. That is not inconsistent with the court's case law. The case law says they're competent to testify as the cause, but you may not give much credit to what they're saying. I don't think so. I don't think that's right. And you'd hang your hat on footnote 4 in Jandrow? I would direct the court to Jandrow as the articulation of the rule in Jandrow and Davidson where it's still a case-by-case adjudication. The error below in Davidson and Jandrow was the categorical exclusion of lay evidence. The adjudicator said, I don't want to even hear lay evidence. That's the question is whether or not I read the BVA here as categorically throwing the lay testimony aside when he says they're not competent. The only competent opinion of record was that of the audiologist. And if the court goes further in that sentence, it's talking about cause. The only competent opinion of record to talk about causation, which is a medical matter, was the audiologist's report. And that is perfectly consistent with Jandrow. The record shows that the board considered the lay testimony for purposes of continuity of symptomatology. To the extent continuity of symptomatology applies to this case, the board viewed the case as consistent. The lay evidence in Nicholson and other cases went to cause. In the one case where the question was whether or not the guy committed suicide, what was the cause of his death? And the wife said, you know, he killed himself. And that was lay testimony as to causation. And we held that it was illegal to throw that evidence out. But there's a different disease there. Go back to Jandrow. I would encourage the court to look at Jandrow on a case-by-case basis based on the particular condition at issue. No, I don't disagree with you on a case-by-case basis. For example, if you take lay testimony. A good example would be the lay testimony is that the person had hearing loss, and the hearing loss was caused by the fire department. But let's assume that the person was testifying themselves were hearing impaired or some other way impaired and didn't receive information correctly. Then you would put that lay evidence on the record, and you would discount it. The way you would in any court proceeding. So where in our case law do we say that the lay testimony as to causation is incompetent? I just disagree with the court's assertion about, respectfully, about what Jandrow is. I think that that case said you can't categorically discount it, but that doesn't mean that the board could not make a competency determination on that evidence. And that evidence goes to zero based on that competency determination on a case-by-case basis. I don't think you have to articulate it. At least some basis for saying that it's incompetent. I think that what we have here is sufficient to establish that. I think that the board needs to make the adjudication. The board needs to make the call. The board here said this evidence as to causation. This is not continuity of symptomatology. We're basically arguing about what the board opinion actually held, and probably the strongest statement in the otherwise not very clear opinion that helps you is where the BVA said, therefore, the board affords more probity value to the audiologist than they do to the lay witness. That's right. And that's when they gave some weight to the, in your view, some weight to it. That's exactly right. For continuity of symptomatology, it was considered. The board gave some value to the lay testimony about Mr. Walker's symptoms. Not to prolong, but what's your bottom line on what's supposed to happen here? What are we supposed to do with the 3.303B argument that your adversary is making, which is that causation doesn't count, and you seem to agree with that. I think the way that the court should resolve this case first is on the waiver issue, which we haven't discussed. Well, let's assume you won't go there. But if the court reaches the merits, I think the court can narrowly decide this case. And the way that the court could decide this case without having a long discussion of 3.303B, I don't think this is the appropriate case for it. Wait, wait, wait. Whether or not it's the appropriate case for it, let's assume we're going to address it, okay? Sure. My understanding of your earlier argument was that bilateral hearing loss is not a chronic condition within the meaning of 3.303B, correct? That is correct. And so 3.303B has nothing to do with the case. That is correct. Now, I hasten to add, so as not to mislead the court, that the Veterans Court has extended 3.303B beyond the enumerated chronic conditions. So that's when I said we get to first principles. If we're looking at the regulation, there's Veterans Court law out there. And in Groves, in footnote 1 of Groves, which is another one of the very few cases of this court addressing 3.303, the court seems to suggest that the Veterans Court's extension of 3.303B to other conditions, not chronic conditions, is accurate. Doesn't it apply in the face of administrative law to give no weight to interpretation by the agency? I would agree with that. I think that the agency's interpretation of 3.303B should simply be discounted. No, I don't think that the agency's, the secretary's position is crystal clear. The Veterans Court, the independent appellate tribunal, has done things that we disagree with. If the court wants to talk – Do we pay attention to their level of expertise? Absolutely, to the extent persuasive. This court is not bound by the Veterans Court. But the Veterans Court took 3.303B. We don't give Chevron deference to the Veterans Court. That's correct. That's absolutely correct. Our position is that the court can address this case by determining whether the board in fact applied 3.303B. That is the sole issue that the court need address. If the court wants to have a broader discussion about 3.303B, looking at the regulation, then our position is that, to the extent that that's where the court goes, our position is that bilateral hearing loss is not enumerated in 3.303B. You tell us that the agency has decided to extend 3.303B beyond 3.309, beyond the enumerated list. Maybe I misunderstood. We haven't. We haven't said it's gone beyond 3.303B. No, what's happening – You said the Veterans Court has gone beyond. That's correct. The Veterans Court has gone beyond. But the Veterans Administration has not gone beyond. That's correct. Has the agency followed what the court said or not? Which court? The Veterans Court or the Federal Circuit? If we were to greet all of these interesting issues in this case, we would need to decide, presumably with additional briefing, whether the Veterans Court is correct in applying 3.303B beyond the listed disease. That is correct. Because if they're correct, then your adversary is back in the game, right? That's correct. And I don't think that gets Mr. Walker to the ultimate entitlement benefits, but it gets him back in the game. That's absolutely right. It gets us back to trying to figure out what it's all about. That's right. Before we wind this up, I want to come back to A, because I have one more question. There's a sentence in A. This is one of several sentences. It says, this, and that is meaning service connection, may be accomplished by affirmatively showing inception or aggravation during service or through the application of statutory presumptions. Where do you find the causation requirement? Is the requirement of showing causation in 3.03A? I don't know that that is in the actual text. I think that comes from… But doesn't the actual text say the opposite? No. I think what it sets out is a three-part inquiry. And at least this is how the court has interpreted it in numerous cases. You need to show a present disability, in-service occurrence or aggravation, and then a causal nexus between the two. That is how the court has formulated it in numerous cases. Well, what does in-service connection mean? I mean, aren't you really agreeing with the presiding judge's reading here of A? I mean, let's assume something happened. Somebody had a whole lot of dizzy spells. And they went to the infirmary, and the infirmary said, you have a lot of dizzy spells. And that happened during service. And later on, the veteran wants to say that he's entitled to some benefits for that because after he mustered out of the service, even though he was clean on the day he mustered out, he continues to have dizzy spells. Now, he wants to bring a claim. On those facts, what does he have to show to have a prevailing claim? Present disability. I've got to say, he's got his dizzy spells. He has dizzy spells. Right. He needs to show that it was incurred or aggravated in service. Okay. By incurred in service, he went into the infirmary and he said, I've got dizzy spells. And they wrote down dizzy spells. They didn't write down what caused the dizzy spells. They just wrote down dizzy spells. And he needs to show a nexus between the present disability and the relationship. Okay. Now, he brings in a doctor. A doctor testifies. He said, you know, I've analyzed this person here, and they've got these dizzy spells, and I've figured out what it's all about. Now, I go back and I look at the medical record, and I look and I see, well, the doctor who talked to him when he went into the infirmary had the same conclusion I did. He had these dizzy spells, and the veteran said, I got the dizzy spells because I, you know, had a vertigo type of experience. And so the doctor later on says, looks to me like it's the same thing. That's nexus, right? I think that could. It's a finding of fact, number one. So the board would need to accept that and weigh that against other evidence. So I can't say that in that case, absolutely, he would be entitled to benefits. The question is, does he have to show that something happened in service that caused the dizzy spells, such as a fall? No, I think the nexus is between the present disability and the in-service occurrence. So there's no nexus requirement under A to show that the hearing loss resulted from something that happened in service. The nexus requirement is to show that the hearing loss in service has a nexus to the present condition after service. That's right. So on my hypothetical earlier, to be fair here, a veteran is in active duty, but the veteran goes home on furlough. And while on furlough, something happens that causes the dizzy spells. That will be, and he goes to the end, when he gets back off of leave, he goes in and he reports that. That would be something that showed inception during service, right? Or a coincidence. Yeah, I need to be very clear. I haven't looked at those specific rules. I don't know if there's a certain amount of time that someone is on leave, and there are specific rules. We're going to the point that the presiding judge and I have both been laboring on, which was whether or not there is a real live requirement that this condition, the dizzy spells or whatnot, were promoted by something, event that happened, as opposed to him simply saying it happened. He could have got dizzy spells because his wife chewed him out. So here, forget about the acoustic trauma. If someone suffers hearing loss during the period of service, that's service-connected, correct? Under 3.303A. Yes. If there's hearing loss in service, a finding of hearing loss in service, and a present disability of hearing loss, there needs to be a connection between the two. Yes, I understand that. But the hearing loss is service-connected if it manifested itself during the service. If there's a nexus, yes. That's the nexus requirement. There doesn't have to be a nexus with some event in the service, right? No, it actually has to be. Maybe I'm misleading the court. Let me do an example, and I think this will illustrate. Someone has a fall in basic training. They hurt their knee. In-service injury, that's one element of service. Occurrence in service. One element of service connection is established. Thirty years later, they're diagnosed with arthritis of the knee. They come to the Veterans Administration. They seek benefits for that. They say, I'm entitled to service connection. Their present disability is arthritis of the knee. I understand there has to be a connection to show that the arthritis resulted from the knee condition that existed in service. But what I'm trying to get at, and it seems to me you keep giving different answers to this, is whether the knee pain in service or the knee condition in service has to be attributed to a fall during basic training or some event that happened during service, or is it just sufficient that it happened during the period of service, and that makes it service connected? If there's an in-service occurrence? No, there's no in-service. There's no evidence of anything that happened. Respectfully, that would take it out of 3.303A. It says you have to have an in-service occurrence. In-service means while you're in the service. It doesn't mean incurred because of your duties. So the guy comes into the infirmary, and he says, my knee hurts. And the doctor says, well, what happened to you, Clevenger? And he says, I don't know. I don't know. It just started hurting. It just started hurting. It's killing me. And so the doctor gives him an MRI. And the doctor says, holy moly, you've got some things in there that are not working correctly. There's a cartilage tear. Told you so. But the veteran has no idea how it happened. Does he have either for 3.3A, does he have service connection? Was that knee problem incurred coincident with service? I can't say the ultimate question because, again, that would be based on other facts. But my understanding is that that would be an in-service occurrence. If you have a diagnosis in service, the guy comes in, and I think that would be it. But that's the concession I made earlier. I think that there may be specific things in the regs that say, you know, if you're off base and you do it yourself, you do it with some other thing like that, then it would not be. But you need to have the incurred in-service occurrence. And if you jumped off something in basic training, went to the infirmary. We're trying to put aside the jumping off something in basic training. Judge Clevenger's hypothetical. The guy goes in. He says, my knee hurts. There's a cartilage tear in the knee. Nobody knows what caused the cartilage tear. It's still service-connected, right? I can't say that it's service-connected. There's not enough facts. What I can say is it's in-service occurrence, and it could satisfy, potentially, that element of service connection. Put it this way. Does it fail service connection because no one knows how it happened? I don't think so. Because you have a presumption of soundness. Is this going to answer the question? I think that the presiding judge and I have been trying to get to the bottom of it. Does the fact that no one knows, he said, my knee's killing me. How'd it happen? I don't have a clue. I woke up this morning and it was killing me. Now, does that disqualify him automatically? I don't think so. Okay, fine. There may be additional disqualifiers, like if he did it to himself or the regulations someplace. I agree with your point. And there's a presumption of soundness when you come into service. If you have your first medical exam and your knee is fine, then that's the story. Okay, thank you, Mr. Horowitz. Thank you. I appreciate your help. Mr. Foreman, I'll give you four minutes. Just so you know, we're going to ask for a supplemental briefing here, so you don't have to say everything that you need to say in the four minutes you have. Thank you, Your Honor. I guess the most important point I want to make is I think one error in the Secretary's argument is basically the argument that Section 3.309 defines chronic diseases, and that Section 3.303b has somehow improperly gone beyond it. If you look at 3.309, I'm sorry, I don't have a copy here, it's a whole list of bona fide chronic diseases, but it's not an exhaustive list. Well, we'll have to get to the bottom of that regulation that was promulgated and figure out whether that was the intent, correct? Correct. But would you agree that if we were to conclude that bilateral hearing loss is not a chronic disease, then you're out of luck on your argument, right, on b? Yes, although that's a fact. I'm just trying to, you know, we've got a very complicated terrain here we have to work ourselves through. Indeed, but I think if you look at it, you'll see that 3.309 defines a lot of bona fide well-known chronic diseases, thereby saving a lot of time, because then if it occurred in service, regardless of how it occurred, and then it occurs later in the veteran's life, it is presumed to be service-connected. But it's not an exhaustive list. Just one example. For example, I have hearing loss, so I know a fair amount about, I mean, I can try to tell you it's outside the record, but one of the reasons why you can have at least temporary hearing loss is you can have excess of wax in your ears. Yes. And that's probably not going to be, well, maybe it is a chronic disease if the wax comes back chronically, right? I'm not sure about that diagnosis, but I think that points out the reason for this continuity of symptomatology rule in Section 3.303B. Hearing loss is something that clearly can be truly chronic if someone is partially deaf, perhaps it has another situation under which it can be cured. In that case, you apply the continuity of symptomatology rule to try and determine whether the disease is chronic. If it's noted in service, and if the symptoms are continuous, and then when it's finally diagnosed, the diagnosis relates to the symptoms, then 3.303B says that it is service-connected. And I guess I would recommend to the Court the analyses of the Veterans Court in cases like Savage and Barr, because they looked at a lot of the implications of Section 3.303B, and one of the analyses is that there is no requirement for a medical nexus, the causal link that the Secretary is arguing for. They instead determined that... I don't think they are arguing for a causal link. What? They're saying they're not arguing for a causal link. They have conceded that if there's a condition or disease that's manifested during service, you don't have to show what caused it, assuming that it's not... No, I'm sorry, I meant the second meaning of the nexus, which is the causal link between what happened in service... And the later. Yeah, with regard to chronic diseases, the continuity of symptomatology takes care of that problem. The continuity of symptomatology is an alternate way to prove that a chronic disease, where it's been questioned, is in fact qualified as service-connected. Thank you very much. We'll issue an order to leave it on for supplemental briefing. I think that this is too complicated for us to tell you exactly what you want briefed right now. Thank you both counsel very much. This has been very helpful. Thank you.